UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

*Eastern District of Kentucky*
**FILED**
NOV 2 3 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-CV-370-KSF

MARYANN HANNA                                                                    PLAINTIFF

**MEMORANDUM OPINION AND ORDER**

HARLEY LAPPIN, ET AL.                                                          DEFENDANTS

Plaintiff, Maryann Hanna, an individual who is currently confined at the Satellite Camp of the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), has filed a *pro se* civil rights complaint under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Her complaint is accompanied by an eighteen-page legal memorandum [Record No. 1].[1] She has also filed a letter seeking permission to file an Amended Complaint [Record No.6]. The plaintiff has paid the requisite filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

---

[1] The plaintiff was convicted in 1989 in the United States District Court for the the Eastern District of New York ("the trial court") for intent to distribute heroin in violation of 21 U.S.C. §841(A)(1) and transporting monetary instruments in violation of 18 U.S.C. §1956(A)(2)(A). She was sentenced to a 292-month term of imprisonment, with a five-year term of supervised release thereafter.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (I) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## PREVIOUS LITIGATION

On September 19, 2003, the plaintiff filed a previous civil rights action in this Court, being *Hanna v. Thornburgh*, Civil Action No. 03-408-JMH (Joseph M. Hood, presiding) ("the First Hanna Complaint"). The Court construed the First Hanna Complaint as falling under *Bivens*. The plaintiff attached to the First Hanna Complaint a 33-page supplement and a two-inch-thick set of exhibits. The plaintiff asserted numerous violations of her First, Fifth, Sixth, and Eighth Amendment rights. Some of the claims in the First Hanna Complaint appear to have been challenges under 28 U.S.C. §2255 to her federal criminal sentence. Most of the claims, however, related either to the plaintiff's requests for transfers or to complaints about the conditions of confinement in various state and federal correctional facilities where the plaintiff has been confined since 1989. The plaintiff sought permission to proceed with the First Hanna Complaint *in forma pauperis*.

On December 5, 2003, the Court denied the plaintiff's motion to proceed *in forma pauperis* [*See* Record No. 3, 03-CV-408-JMH]. The Court concluded that the plaintiff had sufficient funds in her inmate account with which to pay the filing fee, then $150.00. The Court gave the plaintiff thirty (30) days in which to pay the filing fee. The Court warned the plaintiff that her complaint would be dismissed if she failed to pay the filing fee. The plaintiff did not pay the fee, and on

2

January 16, 2004, the Court dismissed the First Hanna Complaint for want of prosecution.

The plaintiff then filed a motion for reconsideration, arguing that the Court should not have dismissed the action because she did not receive the December 5, 2003 Order, denying her *in forma pauperis* status. She further asserted that on December 10, 2003, and January 13, 2004, she mailed two letters to the Court, allegedly inquiring as to the status of her pending IFP motion. The Court reviewed the docket, concluded that the Clerk's office had not received either of the plaintiff's letters, and denied the motion. The plaintiff appealed. On March 17, 2005, the Sixth Circuit affirmed the dismissal of the First Hanna Complaint. The Sixth Circuit noted that although the plaintiff complained of having prior problems with her mail to and from FMC-Lexington, she took no steps to ensure delivery of her letters to the Court, such as using certified mail.

## NAMED DEFENDANTS

The plaintiff has named the following defendants in the instant complaint: (1) Harley Lappin, Director of the Bureau of Prisons ("BOP"); (2) Harrell Watts, Administrator of the BOP's National Inmate Appeals (the BOP Central Office); (3) K. M. White, Regional Director of the BOP Mid-Atlantic Office; (4) Chris Eichenlaub, Acting Warden of the Satellite Camp at FMC-Lexington; (5) Joe Booker, Jr., Warden of FMC-Lexington; (6) JrBelinda Snead, Associate Warden for Clinical programs at FMC-Lexington; (7) Michael Growse, doctor at FMC-Lexington; (8) Rebecca Durbin, doctor at FMC-Lexington; and (9) John and/or Jane Doe, mail room employees at FMC-Lexington. The plaintiff sues all of the named defendants in both their individual and their official capacities.

## ALLEGATIONS OF INSTANT COMPLAINT
### 1. Eighth Amendment Medical Claims
#### A. Gynecological Problems

The plaintiff alleges that she suffers from serious bladder and uterine conditions dating back

3

to 1994, which the named defendants either refused to treat, or refused to cause to have treated, in a proper or timely manner. She claims that in 1994, when Defendants John/Jane Doe performed surgery on her bladder, they failed to "tack up" her bladder, a procedure which she describes as securing her bladder in proper position. She alleges that as a result of this failure her bladder has sagged and she has experienced numerous other side effects such as urinary leakage, uterine fibroids, spasms and pain in her urinary tract, and that the problems are so severe they impair her ability to function normally and enjoy everyday life.

The plaintiff states that on December 12, 2002, she was referred to an outside OB-GYN who recommended surgery to relieve her pain. She alleges that prison staff denied her request for surgery on the grounds that is was elective in nature, without undertaking any independent evaluation "of the amount of pain suffered or the potential for further damages or side effects." [Complaint, p. 6] She alleges that prison staff also denied her renewed requests to have the surgery performed, on the same grounds. She alleges that as a result of the prison staff's denial of her surgery request, specifically Defendants Snead, Growse and Durbin, she has experienced pain and suffering in violation of the Eighth Amendment of the United States Constitution. She alleges that she has sustained permanent bodily injuries as a result of the denial of her requests for surgery.

The plaintiff alleges in ¶ 31 of her complaint that with regard to this particular medical claim, she pursued every level of the BOP's administrative remedy process as set forth in 28 C.F. R. §542.10-.19 (1998).[2] She alleges that the BOP Central Office denied her BP-

---

[2] Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. See §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General

4

11 on August 5, 2003. She did not, however, provide the Court with copies of her administrative remedies or the BOP's denials of her appeals.

### B. Foot Problems

The plaintiff next alleges that she has foot problems and suffers in particular from spurs in her heels. She states that the pain is so severe that at time she cannot walk. She alleges that despite repeated requests, Defendants Durbin and Growse have failed to render appropriate medical treatment for her foot problems in violation of her rights under the Eighth Amendment.

The plaintiff alleges in ¶ 40 of her complaint that with regard to this particular medical claim, she pursued every level of the BOP's administrative remedy process as set forth in 28 C.F. R. §542.10-.19 (1998). She alleges that the BOP Central Office denied her BP-11 on July 23, 2004. She did not, however, provide the Court with copies her administrative remedies or the BOP's denials of her appeals.

### C. Allergy Problems

The plaintiff further complains that she suffers from a chronic allergy skin condition which causes her hands and feet to crack, itch, and bleed. She alleges that the Ketoconazole cream which Defendant Durbin prescribed for her helped the itching but did not treat the other symptoms. She alleges that although Defendant Durbin referred her to Defendant Growse for evaluation, Dr. Growse refused to provide her with other, unspecified medical treatments "used in the past by BOP staff which had proved successful for her skin problem." [Complaint, 43, p. 10] She complains that Dr.

---

Counsel [BP-11]. *See* §542.15.
    The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

5

Growse's refusal to follow her suggestions as to proper medical treatment constituted cruel and unusual punishment in violation of the Eighth Amendment.

The plaintiff alleges in ¶ 45 of her complaint that with regard to this particular medical claim, she pursued every level of the BOP's administrative remedy process as set forth in 28 C.F. R. §542.10-.19 (1998). She alleges that the BOP Central Office denied her BP-11 on July 26, 2004. She did not, however, provide the Court with copies of her administrative remedies or the BOP's denials of her appeals.

### 2. First Amendment Claims

The plaintiff alleges that the mail room staff at FMC-Lexington mishandled her outgoing and incoming "legal mail." She alleges that their errors and omissions impaired her right of access to the courts, in violation of the First Amendment of the United States Constitution. Specifically, she claims that Defendant John Does, employed in FMC-Lexington's mail room, have improperly read communications between her and her counsel relating to litigation the plaintiff describes as the pending "appeal of her conviction in the United States District Court for the Eastern District of New York. *See Hanna v. United States*, 97 CV 970 (NG)." [Complaint, ¶ 60, p. 12]

Plaintiff alleges that she also has litigation pending in this Court, being the First Hanna Complaint. She claims that the First Hanna Complaint was dismissed because she did not receive a copy of the Court's Order of December 5, 2003, in that proceeding. She complains that she was required to file an appeal of the dismissal of the First Hanna Complaint and preserve her rights.

The plaintiff alleges in ¶ 74 of her complaint that with regard to her First Amendment claim, she pursued every level of the BOP's administrative remedy process as set forth in 28 C.F. R. §542.10-.19 (1998). She alleges that she filed her BP-11 "by placing it in the hands of Defendant

John Does for mailing." [*Id.*] She states that on March 15, 2004, she wrote Defendant Watts at the BOP Central Office requesting the status of her BP-11 appeal [ *Id.*, ¶ 75]. She states that Watts responded on March 30, 2004, and informed her that he had no record of receiving her BP-11 appeal [*Id.*, ¶ 76]. She states that on May 21, 2004, Watts notified her that her BP-11 appeal was rejected as untimely [*Id.*, ¶ 77].

The plaintiff explains that the failure of her BP-11 to arrive in a timely manner at the BOP's Central Office is another result of mishandling by the mail staff at FMC-Lexington. She claims that the mishandling of this piece of mail cost her the opportunity to pursue her First Amendment claim through the BOP's administrative remedy procedures. The plaintiff did not provide the Court with copies of her administrative remedies or the BOP's denials of her appeals.

## RELIEF REQUESTED

Plaintiff seeks punitive damages in the amount of $2,000,000.00. She also seeks injunctive relief in the form of an order: (1) directing the medical staff at FMC-Lexington to have her treated by an OB-GYN, an orthopedic specialist, and dermatologist; (2) directing medical staff at FMC-Lexington to follow, at the BOP's expense, whatever medical recommendations those medical professionals prescribe as to her medical treatment(s); (3) directing the staff at FMC-Lexington to establish separate post Office box addresses to which all inmate legal mail should be sent, and require that all such mail be handled specially to ensure its delivery to inmates; and (4) an order requiring the BOP to notify her 30 days in advance of a proposed transfer so that she can file suit and circumvent the BOP's administrative remedy procedures.

## DISCUSSION

The Court will briefly discuss the issue of whether the plaintiff has demonstrated that she

properly exhausted her First and Eighth Amendment claims. The plaintiff did not attach to her complaint copies of the various administrative remedies which she states that she filed, but she did describe with adequate detail when she filed the grievances and with what BOP entity. Although better practice would have been to provide documentary evidence of her compliance with the BOP's administrative remedy process, the Court does not deem the plaintiff's failure to do so as fatal. Having established that fact, however, the Court determines that each of the plaintiff's claims suffer from other deficiencies, all of which require dismissal on the merits.

### 1. Official Capacity *Bivens* Claims

To the extent that the plaintiff asserts claims for money damages against the named defendants in their *official* capacities, those claims fail. A *Bivens* constitutional claim is only properly asserted against federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "[A] *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984); *see also Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978)).

When damages are sought against federal employees in their *official* capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 847-75 (9th Cir. 1975). When a federal employee is sued in his or her individual capacity, the action is not a suit against the United States. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Because the only proper defendant in a *Bivens* claim is a person acting under color of federal law in that person's *individual* capacity, the plaintiff has failed to state a claim

upon which relief can be based against the named defendants in their *official* capacities. The Court dismisses, with prejudice, the plaintiff's Fifth and Eighth Amendment constitutional claims against the defendants in their *official* capacities.

## 2. Individual Capacity *Bivens* Claims

### A. First and Eighth Amendment Claims Against Lappin, Watts and White

The plaintiff alleges that these defendants, who hold various high-level positions within the BOP, are liable to her for the decisions of the medical staff at FMC-Lexington relating to her medical treatment, and/or the lack of medical treatment. She alleges that all of these defendants, in their supervisory capacities, had an obligation to ensure that the subordinate officials at FMC-Lexington acted in a manner which protected her rights under the First and Eighth Amendments.

Lappin is the Director of the BOP, which is a division of the Department of Justice. White, the Regional Director of the BOP's Mid-Atlantic Office, merely denied the plaintiff's BP-10 appeals. Watts, Administrator of the BOP's National Inmate Appeals, merely denied the plaintiff's BP-11 appeals. None of these defendants were employed at FMC-Lexington at the time of any of the complained-of events. None of these defendants had any direct or personal involvement with the decisions about which the plaintiff complains (denial of adequate medical treatment in violation of the Eighth Amendment and denial of access to the court, via mishandling of legal mail, in violation of the First Amendment).

Construed broadly, the plaintiff's claims against Lappin, Watts and White fall under the doctrine of *respondeat superior*. However, the doctrine of *respondeat superior* cannot provide the basis for liability under *Bivens*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95, (1978);

9

*Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam); *Jones v. City of Memphis*, 586 F.2d 622, 624- 25 (6th Cir.1978).

A claim under *Bivens* requires a showing that the named defendant performed the acts that resulted in a deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998). Liability under *Bivens* is personal and based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizudah*, 595 F.2d 948, 953 (4th Cir. 1979).

Lappin's position as Director of the BOP is not sufficient to impose liability against him in his individual capacity. The same applies to White and Watts in their respective positions. The plaintiff must allege and prove that Lappin, White and Watts personally condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct. *See Copeland v. Machulis*, 57 F.3d at 481.

To the extent that the plaintiff alleges that White and Watts have violated her constitutional rights by repeatedly rejecting her administrative grievances, she asserts a construed due process claim under the Fifth Amendment of the United States Constitution. That claim against White and Watts must also be dismissed, because there is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).[3] In sum, the plaintiff's claims against Lappin, White and

---

[3] There are numerous Sixth Circuit cases which also hold that there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003)

10

Watts in their individual capacities must be dismissed as frivolous.

### B. Eighth Amendment Medical Claims Against Growse, Durbin, and Snead

The plaintiff alleges that the inadequate medical treatment for three different medical conditions violated the Eighth Amendments' prohibition against cruel and unusual punishment. In order to state a cognizable claim under the Eighth Amendment regarding medical care, a prisoner must show both "deliberate indifference" and a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To substantiate an allegation of deliberate indifference, a prisoner must establish that the deprivation was sufficiently serious *and* that officials acted with a sufficiently culpable state of mind. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

Eighth Amendment claims contain both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991). The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations so serious that they deny him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981). The subjective component requires the plaintiff to demonstrate that prison officials acted wantonly, with deliberate indifference to the plaintiff's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id.* at 835-36. Deliberate

---

(Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc.* 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) (" In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure. The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Mays v. Wilkinson*, 181 F.3d 102 (Table), 1999 WL 282690 (6th Cir.(Ohio) April 28, 1999) (same.)

11

indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994). An official must show a conscious disregard to a substantial risk that the inmate will experience serious harm. *Farmer v. Brennan*, 114 S. Ct. at 1979.

In all instances, it appears that the plaintiff was not satisfied with the reasoned medical solutions offered to her. It is not that the plaintiff was not offered medical care so much as it is that the plaintiff did not prefer the kind of medical services that were offered. When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.[4]

The plaintiff has, at the most, set forth an argument over the sufficiency of the conservative

---

[4]

There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas'* holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which would sound in state tort law. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003).

12

course of medical treatment she has been receiving at FMC-Lexington. The plaintiff has not established *deliberate* indifference to her various medical conditions, nor has she established *any* culpable state of mind of any of the named defendants. A dispute over the adequacy of medical care rendered to a prisoner generally does not rise to the level of an Eighth Amendment violation. *Westlake v. Lucas*, 537 F.2d at 860 n.5.[5] Under the facts of this case, the plaintiff has not asserted grounds authorizing the Court to deviate from this rule. Accordingly, the plaintiff's Eighth Amendment medical claims against Defendants Growse, Durbin, and Snead are dismissed with prejudice. 28 U.S.C. §1915(e)(2)(ii).

### C. Eighth Amendment Claims Against Booker and Eichenlaub

The plaintiff alleges that Eichenlaub, as acting warden of the FPC-Lexington Satellite Camp, and Joe Booker, as warden of FMC-Lexington, violated her Eighth Amendment rights to the extent that they did not override the medical decisions of Defendants Growse and Durbin. The plaintiff's Eighth Amendment claims against Booker and Eichenlaub fail for two reasons. First, the Court has already determined that the plaintiff has failed to assert a legitimate Eighth Amendment claim against Defendants Growse, Durbin and Snead. To the extent that Eichenlaub and Booker approved their actions, the plaintiff has also failed to establish any Eighth Amendment violation on their part.

Second, Defendants Booker and Eichenlaub had no personal or direct involvement in the various medical decisions with which the plaintiff takes issue. *See Sanders v. United States*, 760

---

[5] To the extent the plaintiff may be alleging mere negligence in her medical treatment, such a claim should be asserted in state court, not federal court. Federal courts do not have jurisdiction over actions regarding "duties that are analogous to those traditionally imposed by state tort law." *Lewellen v. Metropolitan Govt., et al.*, 34 F.3d 345, 351 (6th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citations omitted)).

13

F.2d 869, 872 (8th Cir. 1985) (warden of federal medical center could not be liable under doctrine of *respondeat superior* for alleged inadequate treatment of prisoner, absent a showing of his personal involvement in the alleged negligent acts).

Booker and Eichenlaub merely denied the grievances the plaintiff filed because she was unhappy with the course of action the physician defendants recommended. That being the case, the plaintiff's allegations against Booker and Eichenlaub appear to be based only on the theory of *respondeat superior*.

As the Court has previously discussed, liability under *Bivens* cannot rest under the *respondeat superior* doctrine. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 691-95. Additionally, the Court has already explained that although the plaintiff is unhappy with the outcome of the grievance process, there is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. at 467; *Flick v. Alba*, 932 F.2d at 729. The plaintiff's Eighth Amendment claims against Booker and Eichenlaub are dismissed with prejudice, as they do not state a basis for relief. 28 U.S.C. §1915(e)(2)(ii).

### D. First Amendment Claims Relating To Outgoing and Incoming Mail

The plaintiff alleges that the mail room staff at FMC-Lexington interfered with her legal mail on numerous occasions. She alleges that mail room staff opened and read her legal mail from courts and her attorney and, in some instances, kept mail from her. First, the plaintiff alleges that the mail room staff's failure to forward her a Deficiency Order resulted in the dismissal of the First Hanna Complaint in January, 2004. Second, she alleged that the John Doe Defendants employed in the mail room of FMC-Lexington read mail that she and her attorney exchanged relating to the appeal of her

14

conviction in the trial court.[6] She described the mail room staff's interference with legal mail related to her criminal case as being:

> "[p]articularly troublesome since the appeal directly relates to the Government's use of an informant to obtain information for the Government given by Plaintiff under attorney-client privilege. Defendant Doe's disclosure to the Government of any confidential communication between Plaintiff and her attorney in connection with this appeal could undermine her case."

[Complaint, p. 13, ¶62].

Under the First Amendment, inmates enjoy the right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-24, 97 S.Ct. 1491 (1977). In order to establish a claim for denial of access to the courts, however, an inmate must demonstrate an actual injury to a non-frivolous legal proceeding concerning his conviction or prison conditions. *See Lewis v. Casey*, 518 U.S. 343, 351-55, 119 S.Ct. 2174 (1996). A prisoner's right of access to the courts is limited to direct criminal appeals, habeas corpus applications which challenge that inmate's sentence, and civil rights claims challenging the conditions of confinement. *Lewis v. Casey*, 518 U.S. at 355; *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999) (*en banc*).

The plaintiff cannot establish that she has experienced an "actual injury" as the result of any alleged interference with her mail at the hands of FMC-Lexington mail room staff. As previously discussed, this Court dismissed the First Hanna Complaint on January 16, 2004. The Sixth Circuit affirmed that dismissal on March 17, 2005, finding that the plaintiff had failed to establish any malfeasance on the part of FMC-Lexington mail room staff. The plaintiff did not sustain an "actual injury," as defined in *Lewis v. Casey*, in relation to the First Hanna Complaint.

---

[6] At the time she filed her complaint on August 3, 2004, she alleged that the appeal of her conviction was still pending.

15

The plaintiff's claim in the instant complaint that FMC-Lexington mail room staff may have interfered with communications between her and her attorney regarding her criminal appeal is also moot.[7] The Court takes judicial notice of the fact that on April 6, 2005, following a remand from the Second Circuit Court of Appeals,[8] the trial court entered a lengthy Opinion and Order denying the plaintiff's §2255 motion to vacate, set aside, or correct her sentence. *See Hanna v. United States*, 2005 WL 783370 (E.D. N.Y., April 6, 2005) (Not Reported in F. Supp. 2d). After a comprehensive analysis of the plaintiff's numerous claims, the trial court determined in that Opinion and Order that the plaintiff's allegations, that she had been denied ineffective assistance of counsel during her criminal trial in violation of the Sixth Amendment, were without merit. In light of the trial court's dismissal of the plaintiff's §2255 motion on the merits, she cannot establish a claim of "actual injury" with respect to that litigation. The plaintiff's First Amendment claims, relating to the mail room at FMC-Lexington, are therefore dismissed as frivolous.

### 3. Request for Preliminary Injunction

The plaintiff seeks a preliminary injunction, requiring the BOP to notify her thirty days in advance of transferring her to another jurisdiction in retaliation for having filed the instant *Bivens* proceeding. The Court must deny this motion for three reasons.

First, to the extent that the plaintiff alleges that she expects the BOP to transfer her, her

---

[7]

The plaintiff's allegation that the appeal of her criminal conviction was still pending when she filed this proceeding, was an inaccurate characterization. The plaintiff was convicted in 1989. What was pending at the time the plaintiff filed the instant complaint was actually a habeas corpus proceeding under 28 U.S.C. §2255 in the trial court.

[8]

*See Hanna v. United States*, 84 Fed. Appx. 129 (2d Cir. (N.Y.) December 31, 2003) (Not selected for publication in the Federal Reporter).

claims of injury are purely speculative. A court must have an actual, existing controversy before it. To satisfy Article III's standing requirements, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L. Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L. Ed.2d 351 (1992)); *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 523-24 (6th Cir. 2001). The instant plaintiff's allegations of possible harassment and/or transfer are based on pure conjecture, not existing facts.

Second, a retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) defendant took an adverse action against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first two elements, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d at 394. The plaintiff has not established a valid retaliation claim, because a transfer to another prison facility does not qualify as "adverse action."

"In *Meachum v. Fano*, 427 U.S.215, 223, 96 S.Ct. 2532, 2538 (1976), the Supreme Court found that the transfer of a prisoner from one institution to another was unprotected by 'the Due Process Clause in and of itself,' even though the change in facilities involved a significant modification in conditions of confinement, later characterized by the Court as a 'grievous loss.'" *Hewitt vs. Helms*, 459 U.S. 460, 467-68, (1983) (citing *Moody v. Daggett*, 429 U.S. 78, 88, n.9 (1976)). Thus, even if the instant prisoner was threatened with a return to a prison facility, it would

17

not qualify as "adverse action" for purposes of establishing a First Amendment retaliation claim. As the plaintiff has failed to allege actionable retaliation, she has not established that she is entitled to preliminary or injunctive relief.

Third, where a party seeks a *preliminary* injunction, the district court must consider the following factors:

(1) whether the movant has a "strong" likelihood of success on the merits;

(2) whether the movant would otherwise suffer irreparable injury;

(3) whether issuance of a preliminary injunction would cause substantial harm to others; and

(4) whether the public interest would be served by issuing a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)).[9]

The Sixth Circuit has held that while these four factors are not prerequisites which must all be met, they are considerations which should be balanced. *In re DeLorean Motor Company*, 755 F.2d 1223, 1229 (6th Cir. 1985). "The four factors . . . may not be weighed mechanically in order to determine if the injunction should be issued. No single factor is determinative but rather, the Court should weigh each of the factors in light of the factual circumstances of the particular case." *Columbia Gas v. Exclusive Natural Gas* , 688 F. Supp. 1245, 1248 (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978), *cert. granted*, 440 U.S. 944 (1979), *cert.*

---

[9] The decision to grant or deny a preliminary or permanent injunction is within the sound discretion of the district court. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1991). *See Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994); *Tyson Foods, Inc. v. McReynolds*, 685 F.2d 99, 101 (6th Cir. 1989).

18

*dismissed* 442 U.S. 925 (1979).

Considering these factors in relation to the facts presented herein, the Court finds that the plaintiff's request for emergency relief is unwarranted. As to factor (1), likelihood of success on the merits, the court has already dismissed the plaintiff's First and Eighth Amendment claims, finding that they are without merit. Thus, the plaintiff is completely unable to demonstrate any likelihood of success on the merits of her *Bivens* claims. Accordingly, she is not entitled to injunctive relief.

As to factor (2), whether the plaintiff would suffer irreparable injury, the plaintiff cannot demonstrate that she would suffer irreparable injury if temporary emergency relief is denied because, as previously discussed, she has no liberty interest in being confined in any particular BOP correctional facility. She therefore cannot establish that she will suffer *irreparable* injury, which is the standard. As to factor (3), the Court finds nothing to suggest that the public or others would be harmed by failing to take emergency action at this time. As to factor (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The plaintiff's request for emergency and/or preliminary injunctive relief is denied.

## CONCLUSION

Accordingly, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants. The plaintiff's "Motion to Proceed" [Record No. 18] is **DENIED** as **MOOT**.

This 23rd day of November, 2005.

*KSF*

KARL S. FORESTER, SENIOR JUDGE